IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| SHAWN SHUMATE, Plaintiff, | ) | Civil Case No. 07-1175-KI |
| vs. | ) | OPINION AND ORDER |
| DON MILLS, et al., Defendants. | ) | |

Shawn Shumate #11311262
Oregon State Penitentiary
2605 State Street
Salem, Oregon 97310

Pro Se Plaintiff

Hardy Myers
Attorney General
Leonard W. Williamson
Assistant Attorney in Charge

Kristin A. Winges
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

Attorneys for Defendants

KING, Judge:

Plaintiff Shawn Shumate was incarcerated at Eastern Oregon Correctional Institution (EOCI) during the events he alleges. Shumate claims he was locked in a cell flooded with raw sewage. Shumate alleges claims against various prison officials for: (1) deliberate indifference pertaining to providing him a safe and secure environment, constituting cruel and unusual punishment in violation of the Eighth Amendment; and (2) interference with his First Amendment right to petition the government and complete the administrative grievance procedure. Before the court is Defendants' Unenumerated 12B Motion to Dismiss–Failure to Exhaust (#16). For the reasons set forth below, I grant the motion.

**DISCUSSION**

Defendants argue that the claims against them must be dismissed because Shumate failed to exhaust his administrative grievance remedies prior to filing this action, as required by 42 U.S.C. § 1997e.

The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion

requirement requires "proper exhaustion," which means compliance with all deadlines and "other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90, 93 (2006).

The PLRA's exhaustion requirement creates an affirmative defense that must be raised and proven by defendants. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003). Because the failure to exhaust nonjudicial remedies is not jurisdictional under the PLRA, the defense is treated as a matter in abatement and is subject to an unenumerated motion to dismiss rather than a motion for summary judgment. The court may look beyond the pleadings and decide disputed issues of fact. If the prisoner has not exhausted nonjudicial remedies, the court should dismiss the claim without prejudice. Id. at 1119-20.

Grievances are processed in accordance with the ODOC Administrative Rules for Inmate Communication and Grievance Review System. Inmates are encouraged to talk to first line staff as their primary way to resolve disputes and, if not satisfied, to use a written inmate communication form. OAR 291-109-0100(3)(a). If this does not resolve the issue, the inmate may file a grievance if it complies with the rules. OAR 291-109-0140(1)(a).

Inmates may grieve: (1) the misapplication of or lack of any administrative directive or operational procedure; (2) unprofessional behavior or action directed toward an inmate by an employee or volunteer; and (3) any oversight or error affecting an inmate. OAR 291-109-0140(2)(a)-(f). A grievance must be filed within 30 days of the incident. OAR 291-109-0150(2) Once the inmate grievance has been logged, the grievance coordinator sends a receipt to the inmate. OAR 291-109-0160(1)(a).

An inmate may appeal a grievance response to the functional unit manager by completing a grievance appeal form and filing it with the grievance coordinator within fourteen days of

receipt of the response. OAR 291-109-0170(1)(a) and (b). The inmate will receive a return receipt. OAR 291-109-0170(1)(a). If still not satisfied, the inmate may appeal the functional unit manager's decision by completing another grievance appeal form and filing it with the grievance coordinator within fourteen days of receipt of the response. Again, the inmate will receive a return receipt. OAR 291-109-0170(2)(a). This final appeal is decided by an assistant director having authority over the issue. OAR 291-109-0170(2)(a)-(c).

While incarcerated at EOCI, Shumate filed a grievance against EOCI's Disciplinary Segregation Staff ("Segregation Staff") on February 1, 2007. He complained that Segregation Staff who worked on January 24 and 25, 2007 would not release him from his cell, which was flooded with sewage. The Grievance Coordinator received the grievance on February 2, 2007, and forwarded it to the EOCI Supervising Executive Assistant to the Superintendent, Doug Harder. On March 6, 2007, Harder responded explaining he had investigated the complaint and discovered that following an inmate disturbance, cells in Segregation were flooded. Inmates who wanted to leave their cells were allowed to go to the recreation yard and other areas. Inmates were instructed to push water out of their cells, they were given sanitizer, and linens were washed. There is no record that Shumate requested to leave his cell. The Grievance Coordinator forwarded this response to Shumate on March 7, 2007, who had been transferred to the Oregon State Penitentiary ("OSP").

The Grievance Coordinator received an appeal from Shumate on March 8, 2007, but the appeal was too early; Shumate had yet to receive Harder's response. The Grievance Coordinator wrote to Shumate, explaining that Harder's response had been mailed to him and providing a

blank appeal form. She allowed extra time for the filing of the appeal to account for mail time, but it needed to be returned by March 26, 2007.

Shumate appealed Harder's response on March 20, 2007. The Grievance Coordinator forwarded the appeal to Superintendent Mills. On April 13, 2007, Superintendent Mills denied the appeal, explaining that staff did not report seeing feces or urine, they wore their normal shoes, and there had been no need for a decontamination team. Staff did report an odor of wet paper and blankets, and the unit was aired out. Some inmates demanded single cells that were not available, and remained in cells that they refused to clean up. Shower schedules were interrupted briefly. The Grievance Coordinator forwarded this response to Shumate at the OSP on April 16, 2007.

Shumate sent two inmate written communications dated April 18 and 19, 2007 to Director Williams, rather than to the Grievance Coordinator. Williams received the communications on April 23, 2007 and forwarded them to the Grievance Coordinator on April 30, 2007. The Grievance Coordinator did not accept these written communications as an appeal because the "time within which to file that final appeal has now lapsed." Pl.'s Compl., Ex. I at 1.

Plaintiff asserts that defendants interfered with his ability to meet the administrative exhaustion requirement, relying on Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). That case defined when administrative remedies are not "available" under the PLRA, such as when prison officials refuse to provide the necessary forms, give erroneous information about filing timelines, fail to respond to a grievance, or threaten or intimidate an inmate to deter complaints.

Plaintiff complains he was transferred so that he could not meet the short timelines, and he complains that he was not given receipts for his grievances and appeals. Plaintiff, however,

was transferred after he filed his grievance, and he was able to successfully file a first appeal from his new location. There is no evidence his transfer made the administrative remedies unavailable.

With regard to the Grievance Coordinator's failure to provide receipts, there is extensive correspondence in the record between the Grievance Coordinator and Shumate explaining that his grievance and first appeal had been received, and had been assigned for responses. The assertions plaintiff makes that he did not receive a response to the grievance appeal he erroneously filed early on March 8, 2007, and that he believed the March 20, 2007 grievance appeal was his second appeal, are belied by the Grievance Coordinator's response to Shumate on March 16, 2007. In that response, the Grievance Coordinator explained that the March 8, 2007 appeal was not a proper appeal because it was sent before Shumate had received Harder's response to Shumate's grievance. She directed Shumate to file an appeal by March 26, 2007 on the form she provided. Shumate complied with the Grievance Coordinator's directions. Additionally, his two communications on April 18 and 19, 2007 were not attempts to "seek assistance [from Director Williams] in effecting exhaustion" as he argues in his briefing, but rather were attempts to "complete my internal remedies process" and to "conclude my grievance process" as he explains in those communications. Pl.'s Reply at 10; Pl.'s Complaint Ex. G at 1; Aff. of Parklyn Maine Attachment 3 at 11. The evidence simply shows that plaintiff did not send his second appeal to the correct person and, as a result, failed to comply with the requisite timelines.

Plaintiff submits no evidence he did not know what was required. The administrative remedies process is explained to inmates in an Admission and Orientation class when they first

arrive at the facility, and makeup classes are available for any inmates who miss the orientation. Furthermore, the administrative remedies process is explained in the inmate handbook, and the forms are available from any housing unit officer. I do note, however, that the Grievance Coordinator ought to follow the regulatory requirements and, by providing receipts to inmates, she would reduce her own work load and remedy any inmate confusion about whether she received grievances and appeals.

Plaintiff argues that it has been the practice of the grievance coordinators to accept late grievances and appeals. This may be so, but plaintiff never requested an extension of time, did not alert the Grievance Coordinator that he had attempted to submit a second appeal by sending it to Director Williams, and he identifies no special circumstances that would have warranted an extension of time.

In short, there is no evidence defendants prevented Shumate from complying with the administrative exhaustion requirements such that the administrative remedies could be characterized as unavailable. Since plaintiff failed to properly file his second appeal, when he had the opportunity to file within the time limits, Shumate has not complied with the PLRA administrative exhaustion requirement, and his Complaint must be dismissed.

Additionally, plaintiff did not file a grievance on the issues he raises in his First Amendment claim and, relatedly, did not file grievances against Don Mills, Doug Harder, William Kishpaugh, Max Williams and Parlyn Maine. These individuals are not members of the Segregation Staff who allegedly kept Shumate confined, but rather are the individuals involved in the administrative remedies process. Again, Shumate has not complied with the PLRA administrative exhaustion requirement.

Accordingly, I dismiss plaintiff's Complaint without prejudice.[1]

## CONCLUSION

Defendants' Unenumerated 12B Motion to Dismiss for Failure to Exhaust (#16) is granted. The Complaint is dismissed without prejudice.

IT IS SO ORDERED.

Dated this 17th day of September, 2008.

/s/ Garr M. King
Garr M. King
United States District Judge

[1]Plaintiff expresses some consternation about defendants' request that the dismissal be without prejudice. The Ninth Circuit has instructed, "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003).